*FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

In re                                         )     Case No.  22-20157-E-13
                                              )     Docket Control No.  KL-1
NELSON A. MADSEN and                          )
SHARON L. BURNS,                              )
                                              )
            Debtors.                          )
_____        )

## MEMORANDUM OPINION AND DECISION

Tri Counties Bank ("Movant") has filed its Motion for the court to enter an order pursuant to 11 U.S.C. § 362(j) determining that the automatic stay has been terminated pursuant to 11 U.S.C. § 362(c)(3)(A) with respect to the Debtor, for all property of the Bankruptcy Estate, and in its entirety in this Bankruptcy Case.[1]

As addressed in this Decision, the court does not find the plain language used by Congress in 11 U.S.C. § 362(c)(3) to be ambiguous as to the scope of the termination of the stay, and the requested relief is denied.[2]

---

[1]  Motion, p. 2:7-17; Dckt. 33.

[2]  At the hearing, Counsel for Movant requested that the court bifurcate the conjunctive relief requested and issue an order stating that the stay terminated as to the Debtor only.  When Counsel was asked for what purpose was such relief requested, he could not state any reason or rights Movant would seek to act on just with respect to the Debtor.  Given that the acts sought to be taken are against property of the Bankruptcy Estate (foreclose on property of the Bankruptcy Estate), the court declined the request to revise the conjunctive relief requested, there being no proper reason for such relief being provided.

**DISCUSSION**

On January 24, 2022, Debtor commenced the current Bankruptcy Case. Debtor had one prior bankruptcy case (21-22819) that was pending and dismissed (January 10, 2022) within one year of the commencement of the current Bankruptcy Case.

Congress addressed what it perceived as non-good faith repeat bankruptcy debtors as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which included enacting 11 U.S.C. § 362(c)(3) and (c)(4). In 11 U.S.C. § 362(c)(3)(A) Congress provides for the termination of the automatic stay "with respect to the debtor" as follows [emphasis added]:

> (3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and **if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed**, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—
>
> (A) the stay under subsection (a) with respect to **any action taken with respect to a debt or property securing such debt** or with respect to any lease **shall terminate with respect to the debtor** on the 30th day after the filing of the later case; . . . .

The plain language of this section states that the automatic stay with respect to a debt (obligation owed by a debtor) and any property securing the debt shall terminate, but only terminate with respect to the debtor after the expiration of the thirty (30) day period. No termination of the automatic stay, other than with respect to the debtor, is provided in 11 U.S.C. § 362(c)(3)(A).

11 U.S.C. § 362(a) provides a series of automatic stay provisions which give rights and protections to the debtor on the one hand, and the bankruptcy trustee, bankruptcy estate, and the interests of creditors with unsecured claims or junior lien secured claims[3] on the other hand.[4] The

---

The court's concerns included that if it were to issue an order granting relief "with respect to the Debtor" and then a non-lawyer representative of the Movant improperly believed that such was also termination of the automatic stay as to property of the Bankruptcy Estate, then the court would be faced with a situation where the Debtor, on behalf of the Bankruptcy Estate, would be asserting a claim for relief for knowing violation of the automatic stay. Then the court would be presented with determining the amount of a corrective sanctions necessary to deter Movant from such knowing violation of the 11 U.S.C. § 362(a) statutory injunction on the future.

[3] In the vast majority of cases, it is the class of creditors with unsecured claims that need the protection of the automatic stay to protect the bankruptcy estate so that all of the value of the property of the bankruptcy estate can be obtained and there be a distribution to creditors with unsecured claims. Without such protections, the creditors with secured claims could quickly strip the estate of property,

provision of 11 U.S.C. § 362(a) provide for specific and extensive statutory injunctive relief, stating (different emphasis added for "debtor" and "property of the estate"):

> [a] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, of judicial, administrative, or other action or proceeding `against the debtor` which was or could have been commenced prior to commencement of the bankruptcy case or recover a claim that arose prior to the commencement of the bankruptcy case;
>
> (2) enforcement against the `debtor` **or** property of the estate a judgment obtained before the commencement of the bankruptcy case;
>
> (3) act to obtain possession of property of the bankruptcy estate, from the bankruptcy estate, or exercise control over property of the bankruptcy estate;
>
> (4) act to create, perfect, or enforce any lien against property of the bankruptcy estate;
>
> (5) act to create, perfect, or enforce `against property of the debtor` any lien that secured a claim that arose before the commencement of the bankruptcy case;
>
> (6) act to collect, assess, or recover a claim against the debtor that arose before the commencement of the bankruptcy case;
>
> (7) setoff any debt owing to the debtor that arose before the commencement of the case against any claim against the debtor;

11 U.S.C. § 362(a)(1)-(7).

It is clear that Congress has created automatic stays which arise to benefit and protect several different entities: (1) **the debtor** and (2) the bankruptcy estate, trustee, and creditors with unsecured claims to be paid from the bankruptcy estate. In the plain language above, there is an automatic stay created in paragraph (4) to protect property of the bankruptcy estate from the creation, perfection,

---

which foreclosure sales or lien sales may not result in recovering the fair market value of such property, but only a distressed foreclosure or lien sale value.

In referencing this protected group of creditors - those with unsecured claims and those with junior lien claims which may only be partially secured - the court references the group as "creditors with unsecured claims."

[4] Congress provides for even greater protection under the Bankruptcy Code beyond the debtor and separately for bankruptcy estate, trustee, and creditors with unsecured claims, including 11 U.S.C. § 1301 and § 1201 which provides automatic stay protections for non-bankruptcy third-party who are co-obligors on consumer obligations with the debtor.

1  or enforcement of liens (which necessarily had to secure a pre-petition debt of the debtor or a post-

2  petition debt secured by a lien authorized by the bankruptcy court). Then, in paragraph (5) there is

3  an automatic stay to protect **property of the debtor** from the creation, perfection, or enforcement

4  of a lien for a pre-petition debt. These paragraphs create two separate automatic stays protecting two

5  different sets of property. If **property of the Debtor** was to include property of the bankruptcy

6  estate, these provisions would be redundant of the other.

7       In 11 U.S.C. § 362(c)(3)(A), Congress recognizes that a debtor filing a second case may be

8  improperly attempting to use a second bankruptcy case filed shortly after the dismissal of a prior

9  case as a front for having an automatic stay to shield the debtor personally and not for any good faith

10  prosecution of such debtor's bankruptcy rights and administration of property of the bankruptcy

11  estate. However, Congress does not provide for such bad faith by the debtor to cause the "property

12  of the bankruptcy estate baby" being thrown out with the "bad faith debtor bath water."

13  **Legal Authority Cited By Movant**

14       Movant provides one case citation (and no legal analysis) as the legal basis in its

15  Memorandum of Points and Authorities in Support of Motion (Dckt. 35) for the proposition that

16  Congress, stating in 11 U.S.C. § 362(c)(3)(A) that the automatic stay **terminates with respect to**

17  **the debtor**, actually means that the automatic stay terminates **with respect to the debtor** and with

18  respect to the bankruptcy estate and property of the bankruptcy estate (which is a separate legal

19  entity from the Debtor). The one sole legal citation provided by Movant is *Reswick v. Reswick (In*

20  *re Reswick)*, 446 B.R. 362, 368, (B.A.P. 9th 2011).

21       In *Reswick* the Bankruptcy Appellate Panel addressed what it found to be confusing language

22  in 11 U.S.C. § 362(c)(3) – concluding that the minority view of interpreting this language to mean

23  that the term "terminates with respect to the debtor" actually means that it "terminates the automatic

24  stay in its entirety" in the bankruptcy case, resulting in there being no automatic stay for property

25  of the bankruptcy estate. At the core of the Bankruptcy Appellate Panel concluding that there was

26  not "plain language" to be read in 11 U.S.C. § 362(c)(3)(A), the panel in *Reswick* stated:

27      If the phrase "with respect to the debtor" meant that the automatic stay only
    terminated as to the debtor personally and as to non-estate property, the opening

28      clause of section 362(c)(3)(A) would be surplusage. There would be no reason for

section 362(c)(3)(A) to reference actions "with respect to a debtor or property securing debt or with respect to any lease" if the interpretation of the Debtor and the majority were correct.

*Reswick v. Reswick (In re Reswick)*, 446 B.R. 362, 368, (B.A.P. 9th 2011).

The Bankruptcy Appellate Panel's conclusion that the reference to "property" must refer to property of the bankruptcy estate, appears to assume that all property of a debtor or "property securing a debt of a debtor" must be and can only be "property of the bankruptcy estate."

It appears that the Bankruptcy Appellate Panel in *Reswick* did not consider that a debtor, who was protected by the automatic stay, might have an obligation that was secured by property owned by other persons (father, mother, business associate, or friend). And that for such obligation, the creditor could be stayed by the statutory injunction granted for the debtor in 11 U.S.C. § 362(a)(6) of any "act to collect, assess, or recover a claim against the debtor that arose before the commencement of the bankruptcy case."

Additionally, it does not appear that the Panel considered that there could be property of a debtor that is claimed as exempt which is initially included in the bankruptcy estate, with no value in the property after the liens on the property and exemption claimed by the debtor. In such situations, it is common for a trustee to quickly abandon such property back to the debtor during the pendency of the bankruptcy case because such property is burdensome (cost of insurance and other expenses to preserve the value of the property as property of the bankruptcy estate, or subject the bankruptcy estate to significant tax consequences if a foreclosure sale occurs while it is property of the bankruptcy estate) or of inconsequential value to the bankruptcy estate. 11 U.S.C. § 554(a). When abandoned to the debtor, the termination of the stay with respect to the debtor would allow the creditor to proceed against such property.

Finally, as discussed below, there is a wide range of property that while owned by the debtor as of the commencement of the case, never becomes property of the bankruptcy estate (and thus not protected by the automatic stay as it applies to property of the bankruptcy estate). These exclusions are found in 11 U.S.C. § 541(b)(1)-(10) and (d). For such property, the termination of the stay as to the debtor would be effective for a creditor having a lien to enforce against such property.

///

5

## PLAIN LANGUAGE OF 11 U.S.C. § 362(c)(3)(A)

The court's analysis of this contention for interpreting the plain language of 11 U.S.C. § 362(c)(3)(A) begins with the basic rules of statutory construction as enunciated by the United States Supreme Court.

**Statutory Interpretation of**
**11 U.S.C. § 362(c)(3)**

To construe what Congress has enacted, judges (and lawyers) always begin with the plain language of the statute. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). The court must consider the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. *JPMCC 2007-C1 Grasslawn Lodging, LLC v. Transwest Resort Props.*, 881 F.3d 724, 725 (9th Cir. 2018). More specifically, courts discern the plain meaning of the statute in its entirety, rather than just the plain meaning of "isolated sentences." *Beecham v. U.S.*, 511 U.S. 368, 372 (1994).

When the language of a statute is "plain," the court cannot disregard its plain terms and must rely on the law as written. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1749 (2020). Even legislative history can never defeat unambiguous statutory text. *Id*. at 1750. As stated in the plain language of the Supreme Court:

> The task of resolving the dispute over the meaning of § 506(b) begins where all such inquiries must begin: with the language of the statute itself. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985). In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917).

*U.S. v. Ron Pair Enterprises.*, 489 U.S. 235, 242 (1989).

Courts interpret undefined terms in the statutory text using the term's "ordinary or common meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). When Congress provides an express definition for a term in the statutory text, courts follow that express definition even if such definition differs from the term's ordinary meaning. *Stenberg v. Carheart*, 530 U.S. 914, 942 (2000).

A court looks to other interpretive tools to determine a statute's meaning "[o]nly where the statutory text is ambiguous. . . ." *Transwest Resort Props.*, 881 F.3d at 725.

1    Merely because there is a division in judicial authority does not render a statute ambiguous.

2    *Reno v. Koray*, 515 U.S. 50, 65 (1995).  Even if a court is more persuaded by the policy implications

3    of one judicial authority that "the law should have been written to say something other than the plan

4    language of the statue," the court must apply the unambiguous law as it is written.  *United States v.*

5    *Rodgers*, 466 U.S. 475, 484 (1984).

6    If the plain language of the statute is being applied differently than Congress's intent, "It is

7    beyond our province to rescue Congress from its drafting errors, and to provide for what we might

8    think, perhaps along with some Member of Congress, is the preferred result." *United States v.*

9    *Granderson*, 511 U.S. 39, 68, (1994) (Justice Anthony M. Kennedy concurring opinion).

10   Finally, it is important to note that the process of formulating the modern Bankruptcy Code

11   took Congress nearly a decade to complete, and its evolution through amendments continues to this

12   day.  The modern Code has significantly changed both substantively and procedurally. *U.S. v. Ron*

13   *Pair Enters.*, 489 U.S. at 240.  Considering the transformative overhaul of the bankruptcy system,

14   "it is not appropriate or realistic to expect Congress to have explained with particularity each step

15   it took." *Id.*  So long as the statutory scheme is "coherent and consistent," courts need not inquire

16   beyond the plain language of the statutory text. *Id.*

17   Reviewing 11 U.S.C. § 362(a), Congress has clearly created four provisions that expressly

18   apply to "the debtor" and three that expressly apply to property of the bankruptcy estate, and others

19   that can apply to both.  Congress clearly distinguishes between the "debtor" and the "property of the

20   bankruptcy estate" when imposing the automatic stay for multiple purposes.

21   COLLIER ON BANKRUPTCY provides the following discussion and citations supporting its

22   analysis that the termination of the automatic stay "with respect to debtor" as provided in 11 U.S.C.

23   § 362(c)(3)(A) is not termination of the stay as to "property of the bankruptcy estate," including:

24   [a] Scope of Stay Limitation

25   There are certain limitations arising from the express wording of subsection (c)(3).
     First, the **stay terminates under this provision only "with respect to the debtor."**
26   As in other provisions in section 362, Congress sought in subsection (c)(3) to
     **distinguish between actions taken against property of the debtor and property**
27   **of the estate.**[18]  This intent to limit the stay termination to actions against the debtor
     is made abundantly clear when the language in subsection (c)(3) is compared to the
28   much broader scope of the parallel stay termination provision in subsection (c)(4)[19]

for a debtor who has had two dismissed cases within the prior year, particularly since both provisions were enacted at the same time as part of the 2005 amendments.[20] Thus, if there has been a stay termination based on the operation of subsection (c)(3) in a case filed within a year of a prior dismissal, the automatic stay provided under section 362(a) continues to apply in that case as to actions taken against property of the estate, but not as to actions against the debtor or property of the debtor that is not property of the estate.[21]

18  *See, e.g.*, 11 U.S.C. § 362(a)(1) ("against the debtor"), 362(a)(2) ("against the debtor or against property of the estate"), 362(a)(3) ("property of the estate or of property from the estate"), 362(a)(4) ("against property of the estate"), 362(a)(5) ("against property of the debtor"), 362(a)(6) ("against the debtor").
19 11 U.S.C. § 362(c)(4)(i); see ¶ 362.06[4] infra.

20  *See Jumpp v. Chase Home Fin., LLC (In re Jumpp)*, 356 B.R. 789 (B.A.P. 1st Cir. 2006); *In re Moon*, 339 B.R. 668, 671 (Bankr. N.D. Ohio 2006) ("Had the drafters of this provision intended that the whole of the automatic stay would terminate, they could have easily just referenced § 362(a) as they did in § 362(c)(4)(A) ('the stay under subsection (a) shall not go into effect upon the filing of the later case').").

21  *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d 226 (5th Cir. 2019); *In re Holcomb*, 380 B.R. 813 (B.A.P. 10th Cir. 2008); *In re McGrath*, 621 B.R. 260 (Bankr. D.N.M. 2020); *In re Thu Thi Dao*, 616 B.R. 103 (Bankr. E.D. Cal. 2020); *In re Roach*, 555 B.R. 840 (Bankr. M.D. Ala. 2016); *In re Hale*, 535 B.R. 520 (Bankr. E.D.N.Y. 2015); *In re Scott-Hood*, 473 B.R. 133 (Bankr. W.D. Tex. 2012); *In re Alvarez*, 432 B.R. 839 (Bankr. S.D. Cal. 2010); *In re Jones*, 339 B.R. 360 (Bankr. E.D.N.C. 2006); *In re Johnson*, 335 B.R. 805 (Bankr. W.D. Tenn.2006). *But see Smith v. Maine Bureau of Revenue Servs. (In re Smith)*, 910 F.3d 576 (1st Cir. 2018); *In re Reswick*, 446 B.R. 362 (B.A.P. 9th Cir. 2011); *Vitalich v. Bank of N.Y. Mellon*, 569 B.R. 502 (N.D. Cal. 2016); *St. Anne's Credit Union v. Ackell*, 490 B.R. 141 (D. Mass. 2013); *In re Daniel*, 404 B.R. 318 (Bankr. N.D. Ill. 2009); *In re Jupiter*, 344 B.R. 754 (Bankr. D.S.C. 2006).

3 COLLIER ON BANKRUPTCY P 362.06 (16th 2021) (emphasis added).

**Statutory Definitions and Related Law Concerning the Debtor, the Bankruptcy Estate, and Property of the Bankruptcy Estate**

In addressing the contention that "as to the debtor" means as to the "estate and all other parties in interest," Congress has not left the courts, attorneys, and parties to scavenge the vast desert of "common meanings" to discern what is meant by "debtor," "bankruptcy estate," or "property of the bankruptcy estate."

Definition of Debtor

The terms "debtor" and "bankruptcy estate" are not undefined theoretical concepts for courts to develop in the future.  First, Congress does not leave who or what is a "debtor" for argument of parties and to be divined by the court, but defines "debtor" in 11 U.S.C. § 101(13) to be:

(13)  The term "debtor" means person or municipality concerning which a case under this title has been commenced.

Definition of Person

Congress then makes sure there is no dispute as to who or what constitutes a "person" providing the statutory definition in 11 U.S.C. § 101(41), as:

(41)  The term "person" includes individual, partnership, and corporation, but does not include governmental unit, except that a governmental unit that– . . . .

Then in 11 U.S.C. § 301, 302, and 303 that voluntary, joint, and involuntary bankruptcy cases are commenced by or for the "debtor" in that bankruptcy case.

Thus, the "debtor" is the person who has put him/her/itself voluntarily into bankruptcy or has been placed into bankruptcy involuntarily by creditors.  Such a person is not "property."

Definition of Property of the Bankruptcy Estate

For what constitutes a "property of the bankruptcy estate," Congress provides the federal law by which the bankruptcy estate is create and what it is comprised of in 11 U.S.C. § 541.

In 11 U.S.C. § 541(a)(1)-(7), the property of the bankruptcy estate is the property which the debtor had as of the commencement of the bankruptcy case, proceeds of that property of the estate, specified interests in property acquired within 180 days of the commencement of the bankruptcy case (such as inheritance, life insurance benefit, or property settlement), avoidable pre-petition transfers, and any interest in property that the bankruptcy estate acquires post-petition.

Exclusion of Property From Bankruptcy Estate

However, in 11 U.S.C. § 541(b)(1) - (10) Congress then excludes from property of the bankruptcy estate specifically identified property consisting of: (1) property for which the debtor can exercise power only for the benefit of a person other than the debtor (i.e. power of attorney, administrator, authorized signatory on another person's account); (2) a pre-petition terminated nonresidential lease; (3) higher education assistance program funding; (4) specified oil and gas interests; (5) specified education individual retirement accounts; (6) specified funds in accordance tuition account in accordance with 26 U.S.C. § 529(b)(1); (7) specified employer withholding specified retirement, insurance, and deferred plans; (8) property transferred in exchange for loans

1  or advances for which debtor has no obligation to repay or redeem the property (i.e. pawnbroker);

2  (9) specified money orders; and (10) qualifying state ABLE program contributions.

3        Congress goes further in excluding from property of the bankruptcy estate any property in

4  which the debtor holds bare legal title and no equitable interest in the property. 11 U.S.C. § 541(d).

5  These include being trustee of a trust, a constructive or resulting trust, and statutory trusts.

6        It is clear under the Bankruptcy Code that there can be property which a debtor has as of the

7  commencement of the bankruptcy case, which does not become property of the bankruptcy estate,

8  remains property of the debtor, and will be protected by the automatic stay provisions of 11 U.S.C.

9  § 362(a) that protect the debtor and property of the debtor (which never becomes property of the

10  bankruptcy estate).

11  <u>Recovery of Property from the Bankruptcy Estate by the Debtor</u>

12        Though property of a debtor becomes property of the bankruptcy estate, that does not mean

13  that the debtor cannot regain ownership of such property from the bankruptcy estate. One way for

14  the property of the bankruptcy estate is for it to be abandoned by the bankruptcy estate to the debtor.

15  11 U.S.C. § 554(a) provides that the bankruptcy trustee (or the debtor in possession, Chapter 12

16  debtor, or Chapter 13 debtor exercising the rights, powers, and duties of a bankruptcy trustee as the

17  fiduciary administering property of the bankruptcy estate) may abandon property of the bankruptcy

18  estate "that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

19  In such situations, the bankruptcy trustee obtains an order abandoning the property back to the

20  debtor, and the debtor, not the bankruptcy estate, becomes the owner of such property post-petition.

21        Additionally, a debtor may purchase the property from the bankruptcy estate (pursuant to an

22  order of the court, 11 U.S.C. § 363) to avoid the bankruptcy trustee selling it and giving the debtor

23  that portion of the proceeds from a sale of the property to a third party. The property subject to the

24  debtor's exemption may be of greater value to the debtor than the exemption proceeds. In such

25  situations the debtor will pay the bankruptcy estate for the value that would have been received by

26  the bankruptcy estate if the property had been sold.

27        As demonstrated above, there can be a plethora of property which is not property of the

28  bankruptcy estate but is property of the debtor or someone else who can be protected by the

automatic stay given to the debtor and property of the debtor (11 U.S.C. § 362(a)(1), (2), (5), (6), and 11 U.S.C. § 1201, § 1301 co-debtor stays).  It is not illogical for Congress to provide relief from the stay with respect to the debtor to allow creditors who have rights that can be enforced post-petition against a debtor to do so when there is a repeat filing that is not in good faith.  Merely because a bad faith debtor is not to be protected does not mean that Congress conflated debtor and property of the debtor with property of the bankruptcy estate, stripping the bankruptcy estate, and its creditors, of the automatic stay protecting property of the bankruptcy estate.

**Legislative History**

Although this court finds the plain language of 11 U.S.C. § 362(c)(3) unambiguous, and therefore no look into the legislative history is warranted (or justifiable in interpreting the plain language of 11 U.S.C. § 362(c)(3)(A)), such review is instructive and consistent with the plain language of the statute.  The House Report on these provisions of the Bankruptcy Code includes the following discussion of the automatic stay provisions of 11 U.S.C. § 362(a) [emphasis added]:

> The automatic stay is **one of the fundamental debtor protections provided by the bankruptcy laws**. It `gives the debtor` **a breathing spell** from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

> The **automatic stay also provides creditor protection**. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. **Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally**. A race of diligence by creditors for the debtor's assets prevents that.
> . . .

> Paragraph (2) stays the enforcement, against the `debtor` **or** <u>against property of the estate</u> [recognizing that the bankruptcy estate is legally something separate and apart from the debtor], of a judgment obtained before the commencement of the bankruptcy case. Thus, **execution and levy against** the debtors' **prepetition property** [which is property of the bankruptcy estate, and not debtor, once the case is filed] are stayed, and attempts to collect a judgment from the debtor personally are stayed.

> Paragraph (3) stays any act to obtain possession of <u>property of the estate</u>  (that is, property of the debtor as of the date of the filing of the petition), or <u>property from the estate</u> (property over which the estate has control or possession). The purpose of this provision is to **prevent dismemberment of the estate**. Liquidation must proceed in an orderly fashion. **Any distribution of property must be by the trustee** after he has had an opportunity to familiarize himself with the various rights and interests involved and with the property available for distribution.

Paragraph (4) **stays lien creation against property of the estate** [not property of the debtor]. Thus, taking possession to perfect a lien or obtaining court process is prohibited. To permit lien creation after bankruptcy would give certain creditors preferential treatment by making them secured instead of unsecured.

Paragraph (5) stays any act to create or enforce a lien against **property of the debtor**, that is, most **property** that is **acquired** [by the debtor] **after the date of the filing of the petition**, **property** that is exempted, or property **that does not pass to the estate**, to the extent that the lien secures a prepetition claim. Again, to permit postbankruptcy lien creation or enforcement would permit certain creditors to receive preferential treatment. It may also circumvent the debtors' discharge.

H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 340–344 (emphasis added).

This portion of the legislative history, consistent with the plain language of the statute and statutory definitions, acknowledges that property of a debtor post-petition is something other than what is property of the bankruptcy estate.

Paragraph (6) prevents creditors from attempting in any way to collect a prepetition debt. Creditors in consumer cases occasionally telephone debtors to encourage repayment in spite of bankruptcy. Inexperienced, frightened, or ill-counseled debtors may succumb to suggestions to repay notwithstanding their bankruptcy. This provision prevents evasion of the purpose of the bankruptcy laws by sophisticated creditors.

H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 340-344. As shown in the Legislative History, Congress understood that there are statutory injunction under § 362(a) created for the debtor and separate statutory injunctions created for "property of the bankruptcy estate," with some applying to protect both.

**Application of the Explosive Provisions
of 11 U.S.C. § 362(c)(4)**

Congress has not ignored that a situation may exist where a debtor repeatedly files bankruptcy cases to protect property that will be property of the bankruptcy estate, with such filings being solely for the purpose of delaying creditors who have liens on what becomes property of the bankruptcy estate, with no intention to prosecute the bankruptcy case and administer the property of the bankruptcy estate in good faith. Because 11 U.S.C. § 362(c)(3)(A) only terminates the stay as to the debtor, such a bad faith debtor could then hide repeatedly behind the stay protecting property of the bankruptcy estate, effectively nullifying the practical effect of 11 U.S.C.

§ 362(c)(3)(A).  In such situations the property may be of no economic value to the bankruptcy estate (the liens encumbering the property and exemptions claimed by the debtor exceeding the value of the property), so the bankruptcy trustee and creditors do not push to administer such property or oppose dismissal when such debtor fails to prosecute the bankruptcy case.

Recognizing that such a situation may exist, and to avoid trustees having to file motions to abandon, creditors file motions for relief, and the creditor body as a whole having to go through the time and expense of multiple bad faith bankruptcy proceedings, Congress has expressly provided such relief in the plain language of 11 U.S.C. § 362(c)(4)(A).

In 11 U.S.C. § 362(c)(4)(A), the plain language provides that if there were two or more prior bankruptcy cases pending and dismissed in the one-year period preceding the current case before the court, then no automatic stay goes into effect in the third, fourth, fifth, or however many cases in the prior year were pending for the debtor and dismissed.

Congress does not state in 11 U.S.C. § 362(c)(4)(A) that the automatic stay does not go into effect with "respect to the debtor" in the later filed case.  Congress chose to use a different legal term for 11 U.S.C. § 362(c)(4)(A), stating that the § 362(a) stay does not go into effect in the later filed bankruptcy case, with no qualification or limitations providing that it is only "with respect to the debtor" or any other party in the bankruptcy case.  As addressed above, the "bankruptcy case" is the federal judicial proceeding as provided in 11 U.S.C. §§ 301, 302, and 303, and is not merely the debtor, or the bankruptcy estate, or a related proceeding.  It is the bankruptcy case in which the debtor, the bankruptcy estate, the trustee, and creditors are brought together for the application of the Federal Bankruptcy Laws.[5]

---

[5]  This distinction of "with respect to the debtor" in 11 U.S.C. § 362(c)(3)(A) and "in the bankruptcy case" in 11 U.S.C. § 362(c)(4)(A) also recognizes a practical aspect of multiple bankruptcy filings by a bad faith debtor.  The first case may be filed, stumble forward for a short time, and then be dismissed.  Creditors receive notice of the case, start to act in a manner consistent with a good faith prosecution of a bankruptcy case timeline, and then have the case quickly dismissed.

When the second case is filed within a year of the dismissal of the prior case, the creditors and other parties in interest are forewarned of multiple filings and know to act promptly to protect property of the bankruptcy estate and have it administered for the benefit of creditors.  Not assuming that the debtor is going to prosecute the bankruptcy case in good faith, there may be motions to convert the case, appoint a

1                                    **RULING**

2          As the court has addressed above, the provisions of 11 U.S.C. § 362(c)(3)(A) provide for the

3    termination of the automatic stay with respect to the debtor thirty (30) days after a second

4    bankruptcy case is filed by an individual within one year of a prior case having been pending and

5    dismissed, unless the court extends the stay.  The term "with respect to the debtor" has legal

6    significance, is not ambiguous, is not mere surplusage, and the legal effect thereof is not uncertain.

7    The construct of the Bankruptcy Code, what constitutes property of the bankruptcy estate, what pre-

8    petition assets of a debtor are excluded from the bankruptcy estate, the express provisions of 11

9    U.S.C. § 362(a) which distinctly reference separately "the debtor" and "property of the bankruptcy

10   estate" clearly show that different rights and interests of various parties in interest and the

11   bankruptcy estate are protected.

12         Movant's assertion that termination of the automatic stay "with respect to the debtor"

13   actually terminates the automatic stay in the bankruptcy case and all of the property of the

14   bankruptcy estate is "free for the pickings" is not correct.  The court denies the requested relief for

15   an order saying that the termination of the automatic stay "with respect to the debtor" also is a

16   termination of the automatic stay with respect to property of the bankruptcy estate.

17         The court also denies Movant's oral request that the court bifurcate the conjunctive relief

18   originally requested in the Motion and issue an order stating that the stay terminated as to the Debtor

19   only.  Movant could articulate no necessary, legitimate reason for such relief.  Movant has sought

20   the order stating that there is no stay so it can proceed with a foreclosure on property of the

21   bankruptcy estate.  Being no identifiable reason for issuing an order concerning the stay having

22   terminated "with respect to the Debtor," the court declines the opportunity to issue an order that may

23   be misconstrued by non-lawyers working for Movant into thinking that there is no automatic stay

24

25   _____

     trustee, or other action to protect the bankruptcy estate.

26

27         However, if the creditors and other parties in interest are asleep at the switch and allow the
     second bankruptcy case filed in bad faith dismissed, then they do not get the benefit of the automatic stay

28   in the third or more cases filed that fall within 11 U.S.C. § 362(c)(4)(A).  They will then have to seek the
     court imposing the § 362(a) stay.

imposed by Congress protecting the property of the Bankruptcy Estate in this case.

The court shall issue a separate order denying the Motion for all relief requested therein.

**Dated:** April 27, 2022                    **By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked \_\_\_\_, via the U.S. mail.

| **Debtor(s)** | **Attorney(s) for the Debtor(s)** (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney(s) for Trustee** (if any) | Douglas H. Kraft, Esq.<br>11335 Gold Express Drive, Ste. 125<br>Gold River, CA 95670 |
| Mark H. Atkins, Esq.<br>Tri Counties Bank Legal Department<br>P.O. Box 992570<br>Redding, CA 96099-2570 | |